UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH L. SMITH,

    Petitioner,

v.                                      Case No. 03-CV-70796-DT
                                                             Hon. Denise Page Hood

JOAN YUKINS,

    Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

### I. Introduction

Petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a Oakland County Circuit Court jury of first-degree murder pursuant to MICH. COMP. LAWS § 750.316 and possession of a firearm during the commission of a felony pursuant to MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to a mandatory term of life imprisonment for the murder conviction and two years imprisonment for the felony firearm conviction. For the reasons set forth below, this Court denies Petitioner's application for a writ of habeas corpus.

### II. Facts/Procedural History

Petitioner's conviction arose out of a fatal shooting of her lover, Shaneko Sampson ("Ms. Sampson" or "Decedent"), in Petitioner's condominium on May 2, 1997.

1

At approximately 2:30 a.m., a neighbor was awakened by six loud bangs. Petitioner used a neighbor's telephone to call 911. When the police arrived they found Ms. Sampson on the bed and a handgun laying beside the bed. The police found numerous shell casings on the floor by the bed. At trial, Petitioner did not dispute the fact that she had shot Ms. Sampson. The main issues at trial were how and why the shooting happened. The prosecution contended that Petitioner shot Ms. Sampson in a jealous rage because Ms. Sampson was going to break off the relationship. On the other hand, Petitioner claimed that the evidence showed that her relationship with Ms. Sampson was not going to end; that the two of them fought about whether to steal a car; that both of them were intoxicated; and that the shooting occurred during the fight. To the extent necessary, other relevant facts will be set forth in addressing Petitioner's specific grounds for habeas relief.

Petitioner filed a delayed application for leave to appeal to the Michigan Court of Appeals on February 18, 1999. Petitioner raised the following five issues on appeal:

I. The trial court reversibly erred by admitting testimony of the Decedent's mother that five days before the murder, Decedent told her mother to buy life insurance and informed her mother she was leaving Petitioner.

II. The trial court reversibly erred by admitting prior bad acts evidence.

III. There was insufficient evidence to support a finding of first-degree murder beyond a reasonable doubt.

IV. The trial court erred by denying Petitioner's motion to quash the information, because the prosecutor had presented insufficient evidence of premeditation and deliberation, nor of malice, at the preliminary examination.

V. The trial court reversibly erred by admitting the testimony of Officer Willick at the crime scene and later at the police station.

On June 29, 2001, the Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion. *People v. Smith*, Case No. 217631, 2001 WL 738402 (Mich. Ct. App. June 29, 2001)(per curiam). Petitioner then filed a delayed application for leave to appeal with the Michigan Supreme Court which was denied. *People v. Smith*, Case No. 119880 (Mich. March 4, 2002)(per curiam).

On February 25, 2003, Petitioner filed her present petition for a writ of habeas corpus. Respondent filed an answer in opposition to the petition on August 29, 2003. Petitioner raises the following four grounds as support for her petition for a writ of habeas corpus:

I. The trial court reversibly erred by admitting testimony of the decedent's mother that five days before the murder, decedent told her mother to buy life insurance and informed her mother she was leaving Petitioner.

II. The trial court reversibly erred by admitting prior bad acts evidence.

III. There was insufficient evidence to support a finding of first-degree murder beyond a reasonable doubt.

IV. The trial court reversibly erred by admitting the testimony of Officer Willick at the crime scene and later at the police station.

## II. Analysis
### 1. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2241, et seq. ("AEDPA") sets forth the standard of review a federal court must apply when reviewing applications for a writ of habeas corpus that were filed after the effective date of the Act, April 24, 1996. Because Petitioner's application was filed after April 24, 1996, the provisions of the AEDPA apply.

28 U.S.C. § 2254(d) imposes the following standard of review that a federal court

3

must utilize when reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Williams, 529 U.S. at 413). In order for a federal habeas court find a state court's application of Supreme Court precedent unreasonable, the state court's decision must have been more than incorrect or erroneous; it must have been objectively unreasonable. See Wiggins, 539 U.S. at 520-521; see also Williams, 529 U.S. at 409.

4

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Williams, 529 U.S. at 412. This phrase refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. See Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (citing Williams, 529 U.S. at 412). Although the requirement of "clearly established law" is to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. See Williams v. Bowersox, 340 F.3d 667, 671 (8th Cir. 2003); Dickens v. Jones, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, the AEDPA requires that this Court presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. See Warren v. Smith, 161 F.3d 358, 360-61 (6th Cir. 1998).

### b. Right to Confront Witnesses

Petitioner first argues that she is entitled to habeas relief because the trial court erroneously admitted testimony from Decedent's mother, Bernadine Sampson, that five days before her death, Decedent told her mother to buy life insurance and that Decedent intended to leave Petitioner. Petitioner claimed this testimony violated her Sixth Amendment Right to confront witnesses. Petitioner's arguments on this issue relate to whether the trial court's admission of this evidence was proper under Michigan law. The law is, however, well established that habeas corpus is not available to remedy a state court's error in the application of state law. See Estelle v. McGuire, 502

U.S. 62, 67-68 (1991) (holding that "we reemphasize that it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions."). Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue regarding evidence being admitted at trial does not amount to an error of constitutional import. See Cooper v. Sowders, 837 F.2d 284, 286 (6th Cir. 1988). As the Eight Circuit has explained, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy." Barrett v. Acevedo, 169 F.3d 1155, 1163 (8th Cir.) cert. denied, 528 U.S. 846 (1999).

Whether the Michigan courts correctly analyzed the admission of Bernadine Sampson's testimony under the Michigan Rules of Evidence is of no import to this petition for a writ of habeas corpus because habeas relief may not be based upon an error of state law. The only salient question is whether the admission of this testimony caused Petitioner's trial to be "fundamentally unfair." See Aldrich v. Bock, 327 F.Supp.2d 743, 760 (E.D. Mich. 2004). Here, the Michigan Court of Appeals determined that the testimony was properly admitted. The Court of Appeals explained:

> Defendant first argues that the trial court erred in admitting testimony by the victim's mother regarding statements the victim made to her shortly before the murder regarding the victim's intent to discontinue her relationship with defendant and to plan for some funerals and procure more insurance "in case something happens." The Supreme Court has held that statements by murder victims regarding their plans and feelings are admissible. People v. Fisher, 449 Mich. 441; 537 NW2d 577 (1995).

People v. Smith, slip op. at 1.

The Court finds that this determination was reasonable. Because this evidence was properly admitted into evidence, Petitioner was not denied a fair trial. Estelle, 502

6

U.S. at 70 (holding no basis for federal habeas relief because challenged evidence was properly admitted into evidence); Aldrich, 327 F.Supp.2d at 760-761 (holding the petitioner was not denied fair trial based on properly admitted evidence).

### c. Prior Bad Acts

Petitioner next contends that she is entitled to habeas relief because the trial court violated her rights under the Sixth Amendment to confront witnesses by erroneously admitting testimony evidence of Petitioner's prior bad acts that were inadmissible pursuant to Rule 404(b) of the Michigan Rules of Evidence. As with her first ground for relief, this ground for relief concerns whether the trial court's admission of this evidence was proper under Michigan law.

As noted above, the law is well established that habeas corpus relief is not available to remedy a state court's error in the application of state law. See Estelle, 502 U.S. at 67-68. Unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue regarding evidence being admitted at trial does not amount to an error of constitutional import. Cooper, 837 F.2d at 286.

Whether the Michigan courts were correct in allowing the prior bad acts evidence to be admitted under the Michigan Rules of Evidence is of no import to this petition for a writ of habeas corpus because habeas relief may not be based upon an error of state law. The only pertinent question is whether the admission of this testimony caused Petitioner's trial to be "fundamentally unfair." Aldrich, 327 F.Supp.2d at 760.

Prior to trial, Petitioner filed a motion in limine to exclude the following evidence offered by three witnesses. First, testimony that in June 1996, eleven months before the shooting, Petitioner and Ms. Sampson attended a party. Ms. Sampson left the party and

7

spent that night at her cousin's house, along with another woman, Gheavanna Stone ("Ms. Stone"). During the night, Petitioner called Ms. Sampson several times and Ms. Sampson hung up the telephone each time. The next day, Petitioner told Ms. Stone that if Petitioner found that Ms. Stone was seeing Ms. Sampson, there was nowhere Ms. Stone could run or hide and that Petitioner would kill Ms. Stone. Ms. Stone also testified that she saw Petitioner with a gun on two occasions, one being after Petitioner had returned from a gun range.

Second, Petitioner sought to exclude a statement attributed to her in the fall of 1996. Jerome Davis testified that he heard Petitioner tell Ms. Sampson that "bitch, I'll f - - - you up."

Third, Petitioner wanted to exclude testimony from Jermon Cross ("Mr. Cross"). Mr. Cross testified that in October 1996, Petitioner told him that Ms. Sampson was going to make Petitioner hurt her because she was playing games with Petitioner. Mr. Cross also testified that in March 1997, he saw Petitioner grab Ms. Sampson by the throat. Mr. Cross further testified that two days before the shooting, Ms. Sampson told Mr. Cross that she need to get away from Petitioner because Petitioner would try something on her. According to Mr. Cross, Ms. Sampson no longer wanted to associate with Petitioner.

Here, the Michigan Court of Appeals determined that the testimony was properly admitted. The Court of Appeals explained:

> Next, defendant argues that the trial court erred in admitting evidence of past arguments between the victim and defendant and that the victim desired to end their relationship. We disagree. The Supreme Court, in *People v. VanderVliet*, 445 Mich. 1205, 520 N.W.2d 388 (1994),

8

> adopted an approach to other-acts evidence that employs the evidentiary safeguards already present in the rules of evidence. First, the prosecutor must offer the evidence for a proper purpose under MRE 404(b); in other words, the evidence must be offered to prove something other than the defendant's propensity to commit the charged crime. *VanderVliet*, supra at 74. Second, the evidence must be relevant to a fact at issue in the case, in order to be admissible under MRE 402. *VanderVliet*, supra. Third, under MRE 403, the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *VanderVliet*, supra at 74-75.
>
> The challenged evidence that defendant had acted violently toward the victim in the past, that defendant had exhibited jealousy of the victim, and that the victim was afraid of defendant and wanted to get away from defendant was offered for a proper purpose – to show defendant's motive for killing the victim. . . . Evidence that defendant threatened the victim in the past is highly probative of motive, such that its probative value outweighs any prejudicial effect of admitting the evidence. . . . Additionally, evidence that defendant owned and was familiar with a handgun was relevant to show defendant's opportunity to commit the crime and to show absence of mistake or accident in the firing of the gun. In short, we are not persuaded that the trial court abused its discretion by admitting the challenged evidence.

People v. Smith, slip op. at 1-2 (citations omitted).

The Court finds that this determination was reasonable. Because this evidence was properly admitted into evidence, Petitioner was not denied a fair trial. Estelle, 502 U.S. at 70 (holding no basis for federal habeas relief because challenged evidence was properly admitted into evidence); Aldrich, 327 F.Supp.2d at 760-761 (holding the petitioner was not denied fair trial based on properly admitted evidence).

### d. Sufficiency of the Evidence

Petitioner also contends that she is entitled to habeas relief because there was insufficient evidence to support a finding of premeditation and deliberation to support the

9

jury's verdict that Petitioner was guilty of first-degree murder. For the reasons that follow, this Court disagrees.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). Prior to the enactment of the AEDPA, "the relevant question [was] whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Under the AEDPA, however, the more deferential standard of review applies. "The question here is whether the Michigan Court of Appeals' application of the Jackson standard was reasonable." Aldrich, 327 F.Supp.2d at 762 (citing Gomez v. Acevedo, 106 F.3d 192, 198-200 (7th Cir.), vacated on other grounds sub nom, Gomez v. DeTella, 522 U.S. 801 (1997); Restrepo v. Dipaolo, 1 F.Supp.2d 103, 106 (D.Mass. 1998). To determine whether there is a sufficiency of evidence to establish each element of the charged offense, this Court must examine how the "State defines the offense that is charged . . . ." Patterson v. New York, 432 U.S. 197, 211 n.12 (1977).

Under Michigan law, the elements of first-degree murder are that the defendant killed the victim and that the killing was "willful, deliberate, and premeditated." MICH. COMP. LAWS § 750.316(1)(a). There must be some time span between the initial homicidal intent and the ultimate action to establish premeditation and deliberation and the interval should be long enough to offer a reasonable person time to take a second

10

"look." People v. Gonzalez, 468 Mich. 636, 641, 664 N.W.2d 159 (2003). Factors considered are: "(1) the prior relationship between the parties; (2) the defendant's action before the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after the homicide." People v. Schollaert, 194 Mich. App. 158, 170, 486 N.W.2d 312 (1992). Proof of motive is not required to sustain a first-degree murder conviction. See People v. Abraham, 234 Mich. App. 640, 657, 599 N.W.2d 736 (1999). Finally, circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove a charge of first-degree murder. See People v. Herndon, 246 Mich. App. 371, 415, 633 N.W.2d 376 (2001).

In affirming Petitioner's conviction in the present case, the Michigan Court of Appeals observed:

> . . . . In reviewing a sufficiency of the evidence issue, we view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. . . .
> Defendant argues that the evidence showed that defendant and the victim fought about whether to steal a car, that both defendant and the victim were intoxicated, and that the shooting occurred during the fight. However, the evidence does not compel the conclusion that this was a killing in hot blood or in a rage. While the police officers did smell alcohol on defendant's breath, they testified that defendant was not intoxicated. Further, the only evidence of the fight itself was defendant's own statements. In any event, we do not view evidence in the light most favorable to defendant, but in the light most favorable to the prosecution. The prosecution presented evidence that the victim and defendant were involved in a romantic relationship and that defendant was jealous and had exhibited violence towards the victim on prior occasions. Further, the victim had expressed fear of defendant and indicated a desire to end the relationship. Further, a neighbor testified that she heard silence for about three minutes after the shooting and before defendant knocked on her door crying hysterically; there was evidence to suggest that defendant used that time to wash blood from her hands before summoning help.
> The nature of the shooting itself supported a conclusion of premeditation and deliberation. There were multiple gunshot wounds to

11

> the head, one of which was a contact would [sic] (i.e., the gun was held against the back of the victim's head and the trigger was pulled). Further, a neighbor testified that she heard three shots, followed by silence, then three more shots. The time lapse between the volleys can support an inference of premeditation. People v. Tilley, 405 Mich. 38, 45, 273 N.W.2d 471 (1979). Finally, the medical examiner testified that the victim suffered a gunshot wound to her forearm that was defensive in nature and that that [sic] wound was likely inflicted before any of the gunshots to the victim's head were fired. Defensive wounds can be evidence of premeditation. People v. Johnson, 460 Mich. 720, 733, 597 N.W.2d 73 (1999).
> For these reasons, we are satisfied that there was sufficient evidence to support the jury's verdict.

People v. Smith, slip op. at 2-3 (citations omitted).

Upon reviewing the record before this Court, and the Michigan Court of Appeals' resolution of this issue, this Court cannot conclude that the Court of Appeals application of the Jackson standard (whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt) is itself unreasonable.[1] Therefore, this is not a basis for granting Petitioner a writ of habeas corpus.

### e. Statements to Police

Petitioner's final argument is that the trial court erroneously admitted Petitioner's statements to Officer Willick at the crime scene and at the police station. The two statements at issue are as follows. At the crime scene, Officer Willick asked Petitioner what had happened. Officer Willick testified that when she asked Petitioner this question she did not know whether Petitioner was a witnesses, a victim, or a suspect.

---

[1] Although the Michigan Court of Appeals did not cite Jackson, the Court of Appeals employed the same standard of review (whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

12

Petitioner responded to the question by stating that her boyfriend had killed the victim by accident with a gun belonging to Petitioner.

Petitioner then agreed to go to the police station where she was questioned by two male police officers, Officers Halcrow and Kiernan. During questioning, Petitioner asked to use the restroom. Officer Willick, who was not participating in the questioning, escorted Petitioner to the restroom. As they walked to the restroom, Petitioner stated "All right, I did it, but she wanted to die anyway" and told Officer Willick that she should handcuff her and take her away. Officer Willick testified that Petitioner made these statements spontaneously and not in response to any questions. Petitioner had not been given her *Miranda*[2] rights at this time.

In rejecting Petitioner's claim of error on appeal, the Michigan Court of Appeals stated:

> An advice of rights is required only where the suspect is subjected to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* warnings are not required before general on-the-scene questioning regarding the facts surrounding a crime. *Id.* at 477-478; see also *People v. Ridley*, 396 Mich. 603, 242 N.W.2d 402 (1976). The simple fact of the matter is that defendant was not yet in custody [when she made the statement to Officer Willick at the crime scene].
> The statement made to Willick at the station house, however, is not so easily disposed of. The trial court found that defendant was in custody at the police station. The trial court, however, further found that defendant's statement to Willick was volunteered and not made in response to any questioning. Volunteered statements made while in custody are admissible even in the absence of *Miranda* warnings. *People v. Raper*, 222 Mich. App. 475, 479, 563 N.W. 2d 709 (1997). The evidence here established that Officer Willick did not participate in the questioning of defendant at the police station and specifically had not

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

>asked defendant any questions during the trip to the restroom which prompted defendant to maker her statement. Therefore, we cannot say that the trial court erred in concluding that defendant's statement to Willick during the restroom trip was volunteered and, therefore, admissible.

People v. Smith, slip op. at 3-4.

As the Michigan Court of Appeals recognized, voluntary statements made without being questioned or pressured by the police are admissible despite the absence of *Miranda* warnings. See also United States v. Murphy, 107 F.3d 1199, 1204 (6th Cir. 1997). Petitioner has not shown that this holding was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. In addition, with respect to the Michigan Court of Appeals' determination that Petitioner's statements were voluntarily made, Petitioner is challenging factual determinations made by a state court. As this Court previously noted, the AEDPA requires that the Court presume the correctness of all state court factual determinations. See 28 U.S.C. § 2254(e)(1). Petitioner may rebut this presumption only with clear and convincing evidence. The Court finds that Petitioner has failed to show by clear and convincing evidence that the trial court's factual finding that her statements were voluntarily made was incorrect. Accordingly, this Court rejects this ground as a basis for federal habeas relief.

## IV. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims raised in her petition. Accordingly, the petition for a

writ of habeas corpus **DENIED** and the case is **DISMISSED**.

**IT IS SO ORDERED.**

_____
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

DATED: **MAY 2 6 2005**
Detroit, Michigan

15